IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MICHAEL SCOTT BYRD,            )
                               )
        Plaintiff,          )
                               )
vs.                            )    Case No. 11-3076-CV-S-ODS
                               )
NEW PRIME, INC.,               )
                               )
        Defendant.          )

**ORDER AND OPINION (1) GRANTING IN PART DEFENDANT'S SUMMARY JUDGMENT (DOC. 30); AND (2) REQUESTING FURTHER BRIEFING**

Defendant New Prime, Inc. (Prime), moves for summary judgment. The motion is granted in part, and further briefing is ordered.

I. BACKGROUND

On August 5, 2010, Plaintiff Michael Scott Byrd was employed as an over-the-road truck driver for Prime. He reported to his immediate supervisor that he needed to time off from work so he could get a checkup.

Prime provided Byrd a form entitled "Employee Request for Family or Medical Leave." The form asked Byrd to choose (from among five choices) his reason for needing leave. Only one choice related to the health condition of the person requesting time off; it was, "my own serious health condition makes me unable to perform at least one of the essential functions of my job." Byrd chose this reason on the form.

Prime notified Byrd that he was "eligible" for Family Medical Leave Act (FMLA) leave and that he "[met] the eligibility requirements for taking FMLA leave." Prime informed Byrd that he needed to return certification supporting his request for FMLA leave so Prime could "determine whether [his] absence qualifies as FMLA leave."

On August 6, 2010, Byrd sought treatment from the office of Carrie Benson, MD, because he "wasn't sleeping" and "wasn't eating." Byrd was diagnosed with (among

other things) "[b]ipolar i [sic] disorder most recent episode (or current) depressed unspecified," and he was prescribed medication.[1]

Byrd returned to Dr. Benson's office two weeks later on August 20, 2010. He wanted to go back to work. After her examination, Dr. Benson wrote a note stating Byrd was seen in her office and that he "may return to work."

Byrd authorized Prime to obtain his medical records. At the request of Prime's safety department, the medical records were reviewed by John Abraham, MD, a physician at Orion Healthcare, which is located inside the Prime facility. Since 2007, Dr. Abraham has performed evaluations to determine if potential drivers are medically qualified to operate commercial motor vehicles. After reviewing Dr. Benson's medical records, Dr. Abraham determined Byrd was not qualified to operate a commercial vehicle and that he "needs to be stable for at least 1 yr." Dr. Abraham informed Prime of his opinion.

On August 23, 2010, Prime terminated Byrd based on Dr. Abraham's opinion. Byrd went to another doctor (Arthur G. Bentley, Jr, DO) and obtained a medical certificate to drive. He presented this to Prime, but the company refused to accept Dr. Bentley's opinion over Dr. Abraham's and did not rehire Byrd.

Byrd is suing Prime for allegedly violating FMLA, the Missouri Human Rights Act (MHRA), and the Americans with Disabilities Act (ADA), and for wrongful termination. Prime moves for summary judgment.

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] "Bipolar I Disorder is mainly defined by manic or mixed episodes that last at least seven days, or by manic symptoms that are so severe that the person needs immediate hospital care. Usually, the person also has depressive episodes, typically lasting at least two weeks." *Bipolar Disorder*, NATIONAL INSTITUTE OF MENTAL HEALTH, http://www.nimh.nih.gov/health/publications/bipolar-disorder/complete-index.shtml.

2

matter of law." Fed. R. Civ. P. 56(a).

*(1) FMLA*

Byrd has alleged FMLA claims of interference and retaliation. Prime argues it is entitled to summary judgment on both of them because, in its view, Byrd cannot show that he ever successfully requested leave under the FMLA. The Court tends to disagree with this argument. The Court also tends to disagree with Prime's argument Byrd did not suffer from a "serious health condition" under FMLA. But the Court nevertheless concludes Prime is entitled to summary judgment on Byrd's FMLA claims.

First, to survive summary judgment on his retaliation claim, Byrd must demonstrate Prime's reason for firing him (because Dr. Abraham concluded Byrd could not safely operate a truck) was pretextual. *See Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 934 (8th Cir. 2011). One method of doing this which Byrd relies on is by demonstrating the employer changed its explanation for why it fired the employee. *See Phillips v. Mathews*, 547 F.3d 905, 913 (8th Cir. 2008).

When Prime terminated Byrd, it told him it was because he was not medically qualified to operate a vehicle in interstate commerce based on his medical records. But motor carriers like Prime input the circumstances of a truck driver's change of employment in a database known as "HireRight." In Byrd's case, the database shows "Resigned/Quit (or Driver Terminated Lease)" as his reason for leaving Prime.

Byrd argues this creates a genuine issue of material fact whether Prime really terminated him for medical reasons. But Byrd has provided no evidence about HireRight other than the reason it states for his departure; he has not shown whether disqualification for medical reasons (or something similar) was even an option Prime could have chosen in HireRight. There is an insufficient basis for the Court to conclude the reason provided was necessarily false. Also, with respect to Prime's asserted reason for terminating him, Byrd disputes Dr. Abraham's conclusion he was not qualified to safely drive a truck. But the proper inquiry in this context is not whether Dr. Abraham was correct about Byrd's ability to drive, but whether Prime *honestly believed*

3

Dr. Abraham was correct. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 762–63 (8th Cir. 2005). Byrd has identified no evidence indicating Prime did not honestly rely on Dr. Abraham's opinion.

And even if Prime's reason for firing Byrd was false, such a showing "will [not] *always* be adequate to sustain a jury's finding of liability." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. [The employee] is also required to show that the circumstances permit a reasonable inference to be drawn that the real reason [the employer] terminated him was because of his race." *See Johnson*, 422 F.3d at 763 (citing in part *Reeves*, 530 U.S. at 146–47). Byrd's prima facie showing of FMLA retaliation is not strong. It is built on temporal proximity—he has no other evidence of a causal connection between his leave and his termination—and so built it is undermined by the fact that "the allegedly retaliatory motive coincides temporally with the non-retaliatory motive." *Wierman v. Casey's General Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) (citations omitted). And Byrd's evidence that Prime's reason for firing him was false is not strong either. Taken together, Byrd's evidence of discrimination is not sufficient for a jury to conclude Prime terminated Byrd because he took leave from work. Prime is entitled to summary judgment on Byrd's FMLA retaliation claim.

Byrd's FMLA interference claim alleges that after he returned from leave, he was not restored to his position as was his right under 29 U.S.C. § 2614(a). This provision entitles an eligible employee to be restored to his or her employment position (or an equivalent one) if he or she takes leave under § 2612 for the intended purpose of the leave. But "'an employer who "interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."'" *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 934 (8th Cir. 2011) (citations omitted). "Stated another way, 'where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery.'" *Id.* (citation omitted).

Prime contends it would have terminated Byrd based on Dr. Abraham's opinion

4

even if Byrd had not taken leave. Byrd counters by pointing to the same evidence as Prime—that Prime relied on Dr. Abraham's opinion in terminating him. Byrd's theory appears to be that Prime is liable because the medical records Dr. Abraham reviewed were from when Byrd was on leave. But Prime's decision was based on the *content* of those medical records—not their timing. The uncontroverted evidence shows Prime would have terminated Byrd even if he had not taken leave. Prime is entitled to summary judgment on Byrd's interference claim.

### (2) ADA/MHRA

One of the elements of an ADA prima facie case is that the plaintiff be qualified to perform the essential functions of the job, with or without reasonable accommodation. *Tusing v. Des Moines Independent Community School Dist., Tusing v. Des Moines Independent Community School Dist.*, 639 F.3d 507, 515 (8th Cir. 2011). Prime argues it is entitled to summary judgment on Byrd's ADA claim because he cannot meet this element. (Prime's argument equally applies to Byrd's MHRA claim, which is also premised on alleged disability discrimination.)

The parties' dispute centers on 49 C.F.R. § 391.41, a regulation promulgated by the Federal Motor Carrier Safety Administration (FMCSA), which is a separate administration within the Department of Transportation (DOT). This regulation governs the physical qualifications for drivers of commercial motor vehicles. In relevant part, it states a person is qualified if he or she "[h]as no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely." § 391.41(b)(9).

Prime designated Dr. Abraham to provide his expert opinion concerning whether Byrd was qualified to operate a commercial vehicle after returning from leave in August 2010. In his report, Dr. Abraham stated that he based his opinion on § 391.41(b)(9), advisory criteria published by FMCSA, authoritative treatises, and his experience. Plaintiff counters Dr. Abraham misapplied the guidance contained in the authoritative sources he consulted. Plaintiff argues that this misapplication—coupled with Dr.

5

Benson's note he could return to work and Dr. Bentley's medical certification—creates a genuine issue of fact whether he was qualified to drive under § 391.419(b)(9) when he returned from leave.

The Court is concerned that DOT has primary jurisdiction over the issue of Byrd's qualification to drive and/or that Byrd failed to exhaust his ADA/MHRA claim. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 636–37 (8th Cir. 2003) also involved competing physicians' opinions whether a truck driver was medically qualified to drive. Similar to Byrd, the driver in *Harris* sued a prospective employer for discrimination under ADA because the employer relied on its physician's opinion the driver was unqualified and did not accept the contrary opinion of the driver's physician. *See id.* at 637. The Eighth Circuit affirmed the district court's dismissal of the plaintiff's ADA claim because the plaintiff failed to exhaust DOT procedures applicable in instances where there is disagreement concerning the driver's qualifications. *See id.* at 638–39.

The parties are directed to brief whether this case should be dismissed for failure to exhaust remedies as in *Harris*. The briefing schedule is set forth below.

*(3) Wrongful Termination*

Byrd's wrongful termination claim is dependent on the facts alleged with respect to his statutory claims. Prime contends Byrd's wrongful termination claim should fail because his statutory claims fail, and with respect to his FMLA claim the Court agrees. But the Court has not ruled the ADA/MHRA claims. Prime is granted summary judgment on Byrd's wrongful termination claim only to the extent relied on his the allegations in his FMLA counts.

III. CONCLUSION

Prime is granted summary judgment on Byrd's claims of FMLA interference and retaliation. Prime is also granted summary judgment on Byrd's wrongful termination claim to the extent it relies on his FMLA allegations. Prime's brief on the issue whether

6

Byrd disability claims should be dismissed on theories of primary jurisdiction or failure to exhaust remedies shall be filed on or before March 12, 2012.  Byrd's response shall be filed on or before March 26, 2012.  Prime's reply shall be filed on or before April 2, 2011.

IT IS SO ORDERED.

DATE: February 27, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT